UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| TRILLIUM PARTNERS, L.P. | **COMPLAINT** |
| Plaintiff, | |
| -against- | Index No. 24-2259 |
| R4 TECHNOLOGIES INC., PAUL BREITENBACH, IGOR ZHUK, DAVID BRADLEY, MATTHEW BREITENBACH, PETER BELTON and VITALY DUBRAVIN | **JURY TRIAL DEMANDED** |
| Defendants. | |

---

Plaintiff Trillium Partners, L.P. ("Trillium") by its attorneys, PULLP, alleges upon information and belief, except for its own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action as a stockholder and as a note holder of r4 Technologies, Inc. ("r4" or the "Company"), against r4, Paul Breitenbach, Igor Zhuk, David Bradley, Matthew Breitenbach, Peter Belton and Vitaly Dubravin for securities fraud, fraud in the inducement of an investment and note agreement and for breach of fiduciary duties.

2. As set forth below, the Defendants made materially false statements and omissions while soliciting Plaintiff Trillium's investment in r4. This includes, without limitation, Defendant Belton's false and misleading statements about contracts and sources of revenue for r4, inflated projections made knowingly or recklessly, and continued correspondence and falsification and inflation of revenue in order to conceal and continue his fraud. Belton repeatedly insisted

1

Plaintiff's investment had no risk and that "base case" revenue projections were high when in reality they were based on contracts which Belton knew did not exist.

## PARTIES

3. Defendant r4 Technologies Inc. is a Delaware corporation with an address at 38 Grove Street, Building C, in the Town of Ridgefield, Connecticut. The Company is a business application, technology and consulting company providing strategies and solutions to meet its clients' information, technology and business management needs. The Company does business throughout the United States, including but not limited to, in New York.

4. Defendant Peter Belton is an individual residing at 10 Monroe Place, Apartment 2, Brooklyn, New York 11201 and is the Chief Financial Officer of r4 Technologies.

5. Defendant Paul Breitenbach is an individual residing at 48 Charter Oak Drive, Wilton, Connecticut and is the founder and Chief Executive Officer of r4 Technologies.

6. Defendant Igor Zhuk is an individual residing in Stamford, Connecticut and is the Chief Data Science Officer of r4 Technologies.

7. Defendant David Bradley is an individual and the director of EVP solutions of r4 with its principal place of business in Ridgefield, Connecticut.

8. Defendant Matthew Breitenbach is an individual and the Chief Operating Officer of r4 technologies with its principal place of business in Ridgefield, Connecticut.

9. Defendant Vitaly Dubravin is an individual and the Chief Technology Officer of r4 technologies with its principal place of business in Ridgefield, Connecticut.

10. Plaintiff Trillium Partners LP is a Delaware Limited Partnership doing business throughout the United States, including but not limited to, in New York.

## JURISDICTION AND VENUE

11. This is a civil action arising under Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b); under Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240-10b-5; under Section § 20(a) as to individual control persons, and under applicable principles of contract and common law.

12. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337(a); under Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and under principles of supplemental jurisdiction because Plaintiffs state claims form part of the same case or controversy.

13. Venue in this Court exists under 28 U.S.C. § 1391 as the defendant Peter Belton is a resident of Brooklyn, New York and a substantial part of the events or omissions giving rise to the claims herein occurred in Brooklyn, New York.

## FACTS

14. r4 Technologies ("r4") markets itself as an Artificial Intelligence company with expertise in extracting profit from data.

15. r4, by and through its directors and board members including Peter Belton ("Belton"), Paul Breitenbach ("P. Breitenbach"), Matthew Breitenbach ("M. Breitenbach"), Igor Zhuk ("Zhuk"), David Bradley, ("Bradley"), and Vitaly Dubravin ("Dubravin") made direct and indirect material misrepresentations and omissions, and created and distributed investment materials based on material misrepresentations and omissions, to entice Plaintiff and other parties to invest money into r4 and accept shares in lieu of payment for services.

16. Plaintiff relied on those material misstatements and has suffered and will continue to suffer imminently as a result.

3

A.   **Background**

17. On or about December 1, 2021, Defendants made a presentation to Trillium in order to induce Trillium to lend money to r4.

18. The presentation was given in the office of Stephen Hicks, manager of Trillium, in Ridgefield, Connecticut by Peter Belton, the Chief Financial Officer ("CFO"), Paul Breitenbach, the Chief Executive Officer ("CEO") of r4. John Pavia, a board member of r4, was also present.

19. At the presentation, the officers and directors of r4 made specific representations to Hicks, including that the company was projected to increase its cash revenues dramatically in the next four years because of a number of new contracts, including contracts with the Department of Defense, Norwegian Cruise Lines, and the State of Hawaii.

20. The information provided by r4 was intentionally and materially misleading, false, or incomplete.

21. Upon information and belief, the projections and materials disseminated to Trillium at that meeting and in subsequent emails and conversations were created by r4 and its directors, including but not limited to Defendant Belton.

22. Those materials intentionally contained false and misleading statements, as detailed below.

23. Belton, in the presentation and in subsequent phone calls from Brooklyn, represented to Hicks that as a "base case", given those contracts (with the Department of Defense, Norwegian Cruise Lines, and the State of Hawaii, among others), r4 would increase its Net Income a minimum of $15,000,000 by the end of 2022, and increase an additional $20,000,000 by the end of 2023, and an additional $30,000,000 by 2024.

24. Exact figures were then memorialized in an r4 Model which r4 circulated to Trillium in January, 2022 and included an "Income Statement-Base" an "Income Statement-Low Case" as

well as Base case and low case balance sheet projections. (*See* **Exhibit 1**, r4 Model as of January, 18, 2022).

25. The contracts that r4's directors represented were "base case" were not real and enforceable contracts, and any projections based on these supposed hard contracts were misleading and false.

26. Upon information and belief Defendants knew at the time that these projections were false and misleading.

27. The projections in the Income Statement Base-Case were known by Defendants to be false because they were based on hard contracts that they knew did not exist, were not enforceable, or were still being negotiated and had not closed.

28. While Defendants claimed they would imminently increase cash revenues, r4 instead immediatly began taking questionable private stock and NFTs rather than cash, then recorded these as "revenue" in their books and records.

29. Defendants then continued to send annual false and misleading revenue projections that they did not modify to account for the fact that the supposed contracts were never entered into.

30. Defendants, including but not limited to Defendant Belton, reiterated the details of the false and misleading revenue projections in a series of phone conversations from Brooklyn, intentionally omitting the fact that the supposed contracts never closed or were unenforceable.

31. Further, Defendants continue to fail to keep adequate books and records sufficient to meet their obligations to shareholders, including but not limited to Trillium.

32. Upon information and belief, the company has not been able to complete an audit because of the state of the books and records of the company and valuation of suspicious NFT's and private stock as revenue.

33. The value of r4, and accordingly shares of r4, has decreased as a direct result of the above.

34. This plainly material information was provided to and relied upon by Plaintiffs in connection with their respective agreements, making them shareholders of r4.

35. As shareholders, r4 owes Plaintiffs a fiduciary duty to manage r4 in a manner that promotes shareholder interests.

36. Plaintiffs have experienced economic loss as a result of r4's mismanagement.

37. R4 has falsely inflated revenue by using NFTs in place of revenue.

38. R4 also recognized revenue such as shares of companies instead of taking cash payments.

39. r4 and directors made false valuations based on their artificially inflated revenue. This negatively impacted shareholders and the value of r4 stock.

      **B.    The Trillium Note**

40. Initially, at the December 2021, presentation, Defendant Belton told Mr. Hicks that money invested by Trillium would be put towards marketing resources, including hiring net marketing personnel to support high projected revenue in 2022, 2023 and 2024.

41. On or about December 1, 2021, reasonably relying on the representations made by Defendants at the presentation, Trillium loaned r4 $2 million pursuant to a Convertible Promissory Note Agreement ("The 2021 Note"). (*See* **Exhibit 2**, 2021 Note).

42. The 2021 Note constituted the principal sum of Two Million Dollars ($2,000,000) together with interest from the date of this Convertible Promissory Note on the unpaid balance principal balance at a rate equal to 6% per annum, computed on the basis of the actual number of days elapsed and a year of 365 days.

43. The proceeds of this note were intended to be used "for general corporate purposes, growth initiatives, and paying down bank debt."

44. The 2021 Note constituted the principal sum of Two Million Dollars ($2,000,000) together

with interest from the date of this Convertible Promissory Note on the unpaid balance principal balance at a rate equal to 6% per annum, computed on the basis of the actual number of days elapsed and a year of 365 days.

45. The 2021 Note lists the Maturity Date as "December 1, 2026." On the Maturity Date "Any amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty two percent (22%) per annum from the due date thereof until the same is paid." *See* Exhibit 2.

46. Pursuant to the terms of the Note, the Trillium Note was one of a series of notes having been issued already, and thereafter, not to exceed $25,000,000.

47. On or about December 1, 2022, r4 requested Trillium sign a "Reissued Promissory Note" which by its terms cancelled and replaced the note previously issued for $2,000,000 on December 1, 2021. The above terms remained the same. However, the purpose of the note was amended to be used "for general corporate purposes, including to pay principal, interest or fees to the Company's secured lender Hildene Capital Management." ("The 2022 Note"). (*See* **Exhibit 3**, 2022 Note).

    **C.**    **Events of Default and Expedited Maturity Date**

48. Pursuant to the Reissued Promissory Note, upon an "Event of Default" the Note shall "become immediately due and payable and the Company shall pay the Investor, in full satisfaction of its obligations hereunder, an amount equal to 115% times the sum of (x) then outstanding principal amount of this Note plus (y) accrued and unpaid interest on the unpaid principal of this Note to the date of payment (the 'Mandatory Prepayment Date') plus (z) Default Interest, immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and

expenses, of collection (collectively, the "Default Amount").

49. An Event of Default shall constitute, among other occurrences:

> c. *Representations and Warranties.* Any representation, warranty, certificate, or other statement (financial or otherwise) made or furnished by or on behalf of the Company to Investor in writing in connection with this Note, or any of the Other Notes, or as an inducement to Investor to enter into this Note or any of the Other Notes, shall be false, incorrect, incomplete, or misleading in any material respect when made or furnished...

50. Because r4 made false, incorrect, incomplete, or misleading representations, warranties, certificates, and/or other statements (described above) that induced Trillium to enter into the Trillium Note, an Event of Default has occurred.

51. Therefore the Court should issue a judgment awarding the Default Amount, including 115% of the outstanding principal amount of the note, accrued and unpaid interest on the unpaid principal of the Note, plus Default Interest.

52. An Event of Default will also include:

> (d) Other Payment Obligations. Defaults shall exist under any agreements of the Company with any third party or parties, whether or not exercised, to accelerate the maturity of such indebtedness for borrowed money of the Company, in each case, in an aggregate amount in excess of One Million Dollars ($1,000,000)...

53. The provision was modified from $500,000 in the 2021 Note to $1,000,000 in the Reissued Promissory Note.

54. On April 13, 2022, r4 technologies entered two Note Agreements with Invenire Partners LP ("Invenire") and Kings Wharf Opportunities Fund, L.P. ("Kings Wharf").

55. Pursuant to those Note Agreements, Invenire loaned r4 $3,500,000 and Kings Wharf loaned $400,000.

56. Invenire and Kings Wharf filed actions in Connecticut asserting that they each have the right to accelerate the maturity of said indebtedness.

### D. Automatic Conversion Provision

57. Pursuant to the Reissued Promissory Note, Trillium could convert the outstanding amount to shares in r4.

58. The debt would also automatically convert under certain conditions:

**4. Conversion**

> **a.** *Automatic Conversion.* If the Company issues and sells shares of its common stock or preferred stock to investors in the next equity financing of at least $10,000,000 after the date hereof ("Next Equity Financing"), then the outstanding principal amount of this Note, plus all accrued, unpaid interest and any other accounts that may be due (the "**Outstanding Amount**") shall automatically convert in whole without any further action...

...

59. On September 15, 2023, r4 issued and sold shares in its Next Equity Financing in the amount of $5,250,000 to R.F. Lafferty & Co., Inc.

60. The Next Equity Financing after the date of the Trillium Note did not amount to at least $10,000,000., Therefore, any subsequent financing will not automatically convert the debt to shares.

### E. The Trillium Consulting Agreement

61. Mr. Belton and representatives of r4 reached out to Hicks in early 2022 seeking to engage Trillium for consulting services.

62. While negotiating the contract, Defendant Belton, while on the phone from Brooklyn, acting on behalf of r4, continued to make material misrepresentations about r4 effectively reiterating those detailed above about the supposed contracts and the "base" projections based on the supposed income from the supposed contracts.

63. Based on (i) those misrepresentations and omissions, (ii) the misrepresentations made at the meeting in December of 2021, (iii) subsequent misrepresentations (detailed below) made by r4

9

in projected revenue models that were inaccurate and not adjusted, as well as (iv) artificially inflated revenue (detailed below), Trillium agreed to accept 187,500 shares of common stock of r4 as its consulting fee in lieu of cash payment in exchange for consulting services.

64. Specifically, on or about June 22, 2022, Trillium and r4 entered into the Consulting Agreement, pursuant to which Trillium was to provide services to r4. (*See* **Exhibit 4**, Consulting Agreement).

65. The Consulting Agreement contained a provision which provided "all information furnished by [r4] or its representatives, as well as all information contained in public documents issued by or for the Company or made available to the Consultant by the Company, is complete and accurate in all material respects, and does not omit any material fact or information necessary to make the statements contained therein not misleading..."

66. Trillium is a shareholder of r4 pursuant to the terms of the Consulting Agreement.

67. Trillium performed the services as provided by the Consulting Agreement.

68. Trillium has been damaged and continues to be damaged by having accepted shares of r4 in lieu of payment.

**E.     r4's Continued Misrepresentations**

69. The information provided by r4 at the December 2021 meeting was materially misleading, false, or incomplete.

70. However, that was not the end of the misrepresentations.

71. The supposed contracts that r4's directors represented were "base case" were not real, including but not limited to contracts with the Department of Defense, Norwegian Cruise Lines, and the State of Hawaii.

72. Therefore all projections and all the statements made by Belton and others based on these

supposed contracts or the "base" projections were misleading and false as well.

73. Upon information and belief Defendants knew at the time they made the misrepresentations that these projections were false and misleading

74. The projections in the Income Statement Base-Case were known by Defendants to be false because they were based on contracts that did not exist.

75. While Defendants claimed they would imminently increase revenue from the Department of Defense, Norwegian Cruise Lines, and the State of Hawaii contracts, r4 instead began taking questionable private stock and NFTs rather than cash, then recorded these as "revenue" in their books and records.

76. Defendants continued to send shareholders and interested parties annual false and misleading revenue projections that Defendants did not modify to account for the fact that the contracts were never entered into or were not actually generating income.

77. In addition, Defendants continue to fail to keep adequate books and records sufficient to meet their obligations to shareholders.

78. Upon information and belief, the company has not been able to complete an audit because of the state of the books and records of the company.

79. As a result of Defendants' material misrepresentations, Plaintiff has suffered a loss, as the value of r4 has decreased and therefore so has Trillium's investment in r4.

80. This plainly material and false information was provided to, and reasonably relied upon by, Plaintiff in connection with each of the respective agreements, including the Consulting Agreement which made Trillium a shareholders of r4.

81. As shareholders, r4 owes Plaintiffs a fiduciary duty to manage r4 in a manner that promotes shareholder interests.

82. Plaintiffs have experienced economic loss as a result of r4's mismanagement.

83. R4 has falsely inflated revenue by using NFTs in place of revenue.

84. R4 also recognized revenue such as shares of companies instead of taking cash payments.

85. r4 and directors made false valuations based on their artificially inflated revenue. This negatively impacted shareholders and the value of r4 stock.

86. The financials released by r4 in December of 2024 show that r4 is increasing its debt while failing to meet revenue projections and Trillium's investment is at imminent risk if r4 continues to operate in this respect.

87. In addition, Plaintiff is at risk of imminent harm because Defendants continued to make fraudulent misrepresentations in their books and records and projections are intended to shield the fact that r4 is struggling financially. Despite the fraudulent misrepresentations in the Company's books and records, r4 is or will imminently become unable to repay the Trillium Note. Further, r4 continues to decrease in value, and thus the value of Trillium's investment in r4 decreases along with it.

## COUNT I:

**VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934  
AND RULE 10b-5  
AS TO ALL DEFENDANTS**

88. Plaintiff incorporates by reference each and every allegation contained in paragraphs above as if more fully set forth herein.

89. Defendants made false and misleading statements of material fact in order to defraud Trillium and induce them to accept shares as payment for services. This constituted a sale of securities under the Exchange Act.

90. As set forth above, the Defendants made materially false statements and omissions while soliciting Plaintiff Trillium's investment in r4. This includes, without limitation, Belton's false and misleading statements about contracts and sources of revenue for r4, inflated projections made knowingly or recklessly, and continued correspondence and falsification and inflation of revenue in order to conceal and continue his fraud. Defendants Breitenbach and Belton both repeatedly insisted Plaintiff's investment had no risk and that "base case" revenue projections were so high when in reality they were based on contracts which Belton knew did not exist.

91. These statements occurred in multiple locations, but largely in Brooklyn, New York and Ridgefield, Connecticut, and were made both verbally and in writing, on phone calls, Zoom videoconferences and in person. They were made both prior to, and after, Trillium's Note and Trillium's investment. Trillium reasonably relied on these statements to its detriment and has suffered damages as a direct result.

92. By engaging in the conduct alleged in detail above and in the Facts sections of this Complaint, incorporated by reference herein, the Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, knowingly or with severe recklessness:

   a. Employed a device, scheme or artifice to defraud; and/or

   b. Made an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c. Engaged in an act, practice or course of business which operated or would operate as fraud or deceit on any person.

93. Defendants' actions constitute a violation(s) of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

94. Trillium has suffered damages as a direct result of Defendants' fraudulent conduct, in an amount to be proved at trial but in any event more than $150,000.

## COUNT II

## VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AS TO THE INDIVIDUAL DEFENDANTS

95. Defendants Paul Breitenbach, Igor Zhuk, David Bradley, Matthew Breitenbach, Peter Belton and Vitaly Dubravin, are directors and officers of the Company and are therefore subject to liability under Section 20(a) of the Securities Exchange Act.

96. The defendants, either individually or collectively, directly or indirectly, controlled the operations, policies, and activities of the Company, including the dissemination of information to shareholders and the investing public.

97. The defendants participated in or had knowledge of the material misrepresentations and omissions made by the Company regarding misleading projections and artificially inflated revenue used to induce Trillium to accept securities in lieu of a monetary payment.

98. The defendants knew or recklessly disregarded that the statements made by the Company were materially false and misleading, and failed to take appropriate steps to correct or prevent the dissemination of such information.

99. Trillium has suffered damages as a direct result of Defendants' fraudulent conduct in an amount to be proved at trial but in any event more than $150,000.

## COUNT III:
## BREACH OF FIDUCIARY DUTY
## AS TO ALL DEFENDANTS

100. Plaintiff incorporates by reference each and every allegation contained in paragraphs above. The Defendants were fiduciaries to Plaintiffs with respect to their investment in r4, and by virtue of their superior knowledge concerning the r4's business operations and financial condition and, therefore, owed Trillium a fiduciary duty as a shareholder.

101. Defendants breached their fiduciary duty by cooking the books of their company, specifically by continually inflating revenue through intentionally and falsely recognizing revenue and operating the company recklessly.

102. Upon information and belief the company has not been able to complete an audit because of the state of the books and records of the company.

103. Defendants breached their fiduciary duty by concealing from Plaintiffs that they did not have the contracts they claimed were definitive and did not have sources of revenue to support their false and misleading projections.

104. Trillium has suffered damages as a direct result of Defendants' breach of their fiduciary duties in an amount to be proved at trial but in any event more than $150,000.

## COUNT IV:
## FRAUD
## AS TO ALL DEFENDANTS

105. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if more fully set forth herein.

106. As set forth above, the Defendants made materially false statements and omissions while soliciting Plaintiff Trillium's investment in r4. This includes, without limitation, Belton's false and misleading statements about contracts and sources of revenue for r4, inflated projections made

15

knowingly or recklessly, and continued correspondence and falsification and inflation of revenue in order to conceal and continue his fraud. Belton repeatedly insisted Plaintiff's investment had no risk and that "base case" revenue projections were so high when in reality they were based on contracts which Belton knew did not exist.

107. Defendants knew, or should have known, the falsity of their misrepresentations and/or omissions because, collectively, they possessed exclusive knowledge concerning r4's overall financial condition, business operations, and the risks associated with investing in r4.

108. By providing these false misrepresentations and omissions, the Defendants intended to defraud Plaintiff Trillium in connection with its investment.

109. Plaintiff has and will suffer damages caused by detrimental but reasonable reliance on these false statements and misleading omissions, namely, the loss of Trillium's investment and stock value in an amount to be proved at trial but in any event more than $150,000.

## COUNT V:
## BREACH OF CONTRACT
## AS TO ALL DEFENDANTS

110. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if more fully set forth herein.

111. Due to the various defaults on the Note, detailed above and incorporated by reference as if more fully set forth herein, the Note is now in default based on several clauses.

112. As a result, Trillium is entitled to the Default Amount, including 115% of the outstanding principal amount of the note, accrued and unpaid interest on the unpaid principal of the Note, plus Default Interest.

113. The Default Amount has not been repaid despite request for same.

114. Therefore, Trillium has suffered damages in the amount of the Default Amount plus Default

Interest, in an amount to be proved at trial but in any event more than $2,500,000.

## COUNT V:
## INJUNCTIVE RELIEF

115. Plaintiffs incorporate by reference each and every allegation contained in paragraphs above.

116. r4 conducted and completed its next equity financing and did not raise at least $10,000,000.

117. As a result, Trillium is likely to succeed on the merits that the $2,000,000 should not automatically convert.

118. R4's mismanagement of its company has resulted in harm to the share price and the company's prospects for going public.

119. Trillium is at risk of substantial, imminent harm, in the event that r4 attempts to convert its debt into stock.

120. Trillium is therefore entitled to a preliminary injunction based on the express terms of the Trillium Note that it may not automatically convert Trillium's debt prior to the adjudication of this action.

121. Further, r4 owes Plaintiff a fiduciary duty to manage r4 in a manner that promotes shareholder interests.

122. Plaintiff has experienced economic loss as a result of r4's mismanagement.

123. r4 has falsely inflated revenue by using NFTs in place of revenue.

124. r4 also recognized revenue such as shares of companies instead of taking cash payments.

125. r4 and the other defendants made false valuations based on artificially inflated revenue. This negatively impacted shareholders and the value of r4 stock.

126. The financials released by r4 in December of 2024 show that r4 is increasing its debt while

failing to meet revenue projections.

127. Trillium's investment is at imminent risk if r4 continues to operate in this respect.

128. In addition, Plaintiff is at risk of imminent harm because Defendants continued to make fraudulent misrepresentations in their books and records, and the falsified projections are intended to shield the fact that r4 is struggling financially.

129. Despite the fraudulent misrepresentations in the Company's books and records, and despite the falsified, misleading and artificially inflated projections, in reality r4 is or will imminently become unable to repay the Trillium Note.

130. In addition, r4 continues to decrease in value, and thus the value of Trillium's investment in r4 decreases along with it.

131. Trillium is therefore entitled to a preliminary injunction requiring r4 to keep a minimum of $2,500,000 set aside for payment of the Trillium Note until such time as this matter can be adjudicated or otherwise resolved.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in their favor against all Defendants, jointly and severally, as follows:

1. Compensatory damages in an amount to be determined at trial, but not less than $2,650,000;

2. Punitive damages to deter r4 and others from engaging in similar fraudulent conduct;

3. A preliminary injunction preventing r4 from converting Trillium's debt into stock;

4. A preliminary injunction requiring r4 to keep a minimum of $2,500,000 set aside for payment of the Trillium Note until such time as this matter can be adjudicated or otherwise resolved.

5. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury in this action on all issues so triable.

March 26, 2024

New Yok, New York

Respectfully submitted,
PULLP

By:_____
Jon Uretsky
111 Broadway, 8th Floor
New York, New York 10006
uretsky@pullp.com
*Attorneys for Plaintiff*